UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TENISHA BREWER, KATHERINE ROUNTREE, DAPHANIE JONES, AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>MOLINA HEALTHCARE, INC.,<br><br>Defendants. | Civil Action No. 1:16-CV-09523 |
| ROSARIO GONGORA-OWNBY, AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>MOLINA HEALTHCARE, INC. AND MOLINA HEALTHCARE OF TEXAS, INC.,<br><br>Defendants. | Civil Action No. 1:16-CV-11346 |

**ORDER APPROVING SETTLEMENT,
SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS**

The above-entitled matter came before the Court on Plaintiff's Unopposed Motion to Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes, for Approval of Settlement, for Appointment of Settlement Administrator, and For Approval of Awards of Attorneys' Fees and Costs and Service Award ("Motion for Settlement Approval"). After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in

Support of the Motion for Settlement Approval (the "Memorandum"), the Declaration of J. Derek Braziel ("Braziel Decl.") and the supporting exhibits, the Court hereby finds as follows:

### The Settlement Is Approved

1. The Court approves and incorporates by reference all of the definitions contained in the Joint Stipulation of Settlement.

2. The Court certifies, for purposes of the Parties' Settlement, the group of individuals identified on Exhibit A to the Settlement Agreement who worked as Case Managers and Health Managers between June 14, 2014, to June 13, 2016.

3. The Court hereby approves the $3,375,520.89 collective action settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Murphy v. Diversified Restaurant Holdings, Inc.,* No. 14-cv-3653, ECF No. 124, Order Approving Settlement and Dismissing Action, ¶ 1 (N.D. Ill. Oct. 1, 2015); *see also Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

4. Here, the settlement meets the standard for approval. The settlement was the result of contested litigation. Defendant denied that it violated the FLSA by classifying Case and Health Managers as exempt from overtime pay, and the settlement was the result of arm's-length negotiations conducted by Mediator Hunter Hughes. Recognizing the uncertain legal and factual

issues involved, the parties reached their settlement after Defendant produced and the Parties' reviewed comprehensive calculations based on location specific survey results for the Case and Health Managers. At all times during the settlement negotiation process, negotiations were conducted at arm's length.

### The Settlement Procedure Is Approved

5. A one-step settlement approval process is appropriate. *See, e.g.*, *Briggs v. PNC Financial Services Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements.); *Castillo v. Noodles & Co.,* No. 16-cv-030306, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

6. The Settlement Administrator is authorized to include a letter which complies with the provisions of Paragraph 7(g) of the Settlement Agreement along with the settlement

payments to the Settlement Class. The direct issuance of settlement checks informs Settlement Class Members of the specific amounts of their individual Settlement Payments. The letter will also inform Settlement Class Members of the other key terms of the settlement, including how Class Members negotiating their checks will include them in the settlement and bind them, how the Settlement Fund is being allocated, what the Settlement Payment represents, and the scope of the release.. *See Koszyk*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same).

7. The plan for sending the Settlement Payments as described in the Joint Stipulation of Settlement is approved.

**The Service Awards Are Approved**

8. A service award of 7,500 each to Named Plaintiffs Rosario Gongora-Ownby and Tenisha Brewer and a service payment of $3,000 each to Cinderella Brown and Clinton Johnson is approved. The amount shall be paid from the Settlement Fund. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

9. Incentive awards serve the important purpose of compensating plaintiffs for the time

and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

10. In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). An examination of these factors warrants the approval of the requested service awards.

11. First, these Named Plaintiff and Opt-In Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to over 1100 Settlement Class Members, who will receive checks in amounts ranging from a approximately $10 to over $4,800, and the average Settlement Payment is approximately $1,441.55. See *Briggs,* 2016 WL 7018566, at * 3 (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Company,* No. 16-cv-03036*,* 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000

service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards). Brewer, Gongora-Ownby, Brown, and Johnson's actions have resulted in substantial benefit to the class.

12. Second, these individuals undertook substantial direct and indirect risk. In agreeing to file this class action suit in their name and through their increased participation in the case, they undertook the significant risk that, "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). By filing the action, these individuals risked retaliation from current or future employers for the benefit of all Settlement Class Members. *See Beesley,* 2014 WL 375432, at *4 (recognizing that suits against former employers carry risks of professional and personal repercussions). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at *3.

13. Third, these individuals spent a significant amount of time and effort pursuing this litigation on behalf of the Settlement Class Members. They provided factual information and otherwise assisted Plaintiff's Counsel with the prosecution of the litigation, and fielded calls and questions from other class members about the litigation. *Briggs,* 2016 WL 7018566, at * 3 (approving service award to named plaintiffs who expended time and effort providing pre-litigation assistance to plaintiff's counsel, preparing and reviewing the complaint, providing a declaration, and helping prepare for mediation); *Castillo,* 2016 WL 7451626, at * 3 (approving service award to named plaintiffs who participated in an extensive pre-suit investigation, provided documents crucial to establishing the claims, and assisting plaintiffs' counsel in analyzing documents during the informal discovery process). Accordingly, the requested

6

Service Awards are approved.

### Fees and Costs of the Settlement Administrator and Attorneys Are Approved

14. The Court approves of the Settlement Administrator's fees and costs of up to $30,000 to Rust Consulting.

15. The Court grants Plaintiff's Counsel's request for one-third of the settlement as attorneys' fees.

16. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

17. Plaintiff's request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois. *Taubenfeld,* 415 F.3d at 600 (approving attorneys' fees based, *inter alia*, on "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiff's Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the Settlement Class Members.

18. Although Plaintiff's Counsel agreed with the Named Plaintiff to a contingency fee of 40%, Plaintiff's Counsel has only requested one-third of the recovery. The contingency fee agreement was agreed to before the litigation started. Such contingency fee agreements contain

the risk of no recovery whatsoever for Plaintiffs or their counsel. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiff contracted for Plaintiff's Counsel to be compensated with an amount that was larger than what Plaintiff's Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

19. A one-third contingency is reasonable. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely agree to a one-third contingency fee arrangement, reinforces that Plaintiff's Counsel are requesting the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

20. Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Briggs,* 2016 WL 7018566, at *3 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $2,000,000 as attorneys' fees); *Castillo,* 2016 WL 7451626, at *4 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $1,000,000 as attorneys' fees); *Koszyk*, 2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,*

No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

21. Plaintiff's Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiff's Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiff. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiff's Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiff's Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiff's Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

22. Plaintiff's Counsel's request for reimbursement of up to $10,000 in actual out-of-

9

pocket expenses incurred in prosecuting this case, including costs for filing and service fees, and postage is granted. The Court finds these costs to be reasonably incurred.

### Dismissal and Post-Judgment Procedure

23. This case is to be dismissed without prejudice, in accordance with the terms of the Settlement Agreement, eleven days after the date of this order to permit those individuals who are excluded from the class to withdraw their consents without penalty. The Clerk will allow Plaintiffs to file Notices of Withdrawal of Consent up to and including ten days after the date of this Order.

24. The Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds.

25. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 12 day of June, 2018

_____
Honorable Robert M. Dow
United States District Judge